**[J-87-2022] [MO: Brobson, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 796 CAP |
| | : | |
| Appellee | : | Appeal from the Order entered on |
| | : | May 5, 2022 in the Court of |
| | : | Common Pleas, Lancaster County, |
| v. | : | Criminal Division at No. CP-36-CR- |
| | : | 0002879-2010. |
| | : | |
| JAKEEM LYDELL TOWLES, | : | SUBMITTED:  December 2, 2022 |
| | : | |
| Appellant | : | |

## CONCURRING OPINION

**JUSTICE WECHT**                                    **DECIDED:  August 22, 2023**

Nearly ten years after his first-degree murder conviction became final under the Post Conviction Relief Act,[1] Jakeem Towles obtained an affidavit from Antwain Robinson. Robinson had testified against Towles at trial.  Robinson testified that he was with Towles before, during, and after the May 7, 2010 murder of Cornell Anton Stewart, Jr., and the attempted murder of John Wright.  In his March 5, 2020 affidavit, Robinson stated that he testified for the Commonwealth because "investigators threatened me that if I did not cooperate with them and testify at Jakeem Towles' [ ] trial, I could be charged with crimes related to the incident and I could go to jail."[2]  Robinson stated that he "believed them and

---

[1]      42 Pa.C.S. §§ 9541-9546 ("PCRA").  Pursuant to the PCRA, a "judgment becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review."  *Id*. at § 9545(b)(3).

[2]      *See* Maj. Op. at 5 (citing Second PCRA Petition, Appendix).

. . . was scared."[3]   Armed with this affidavit, on May 4, 2020, Towles filed a facially untimely second PCRA petition.  Towles claimed that the Commonwealth induced false testimony from Robinson and withheld this information in violation of *Brady v. Maryland*.[4]

Towles argued that his second PCRA petition was timely because it fell within the PCRA's timeliness exceptions for governmental interference and newly discovered facts.[5] Towles claimed that he acted with due diligence in asserting his claim within the one year time requirement of Section 9545(b)(2).[6]   To establish due diligence, our case law requires a petitioner to plead and prove that the information upon which the claim is

---

[3]      *Id*.  The PCRA court referred to Robinson's "alleged signature" on the affidavit and speculated that counsel may have drafted the affidavit.  PCRA Ct. Op. at 16, n.10.  From this, the Majority states that the PCRA court "did not look favorably upon Robinson's affidavit," Maj. Op. at 24, and characterizes the affidavit as "discredited."  *Id*. at 26, n.18. While the PCRA court may have questioned whether Robinson signed the affidavit, it made no finding that that Robinson did not do so.

[4]      373 U.S. 83 (1963) (requiring the government to disclose all favorable evidence that is material to guilt or punishment).

[5]      Section 9545(b)(1)(i)-(ii) provides:

(1) Any petition under this subchapter, including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final, unless the petition alleges and the petitioner proves that:

(i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States; [or]

(ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence.

42 Pa.C.S. § 9545(b)(1)(i)-(ii).

[6]      "Any petition invoking an exception provided in paragraph (1) shall be filed within one year of the date the claim could have been presented."  *Id*. § 9545(b)(2).

predicated could not have been obtained earlier with the exercise of due diligence.[7]  As we have explained,

> Due diligence is a fact-specific concept that must be determined on a case-by-case basis.  Due diligence does not require perfect vigilance and punctilious care, but rather a showing by the [party] that a reasonable effort has been put forth.[8]

By its express terms, the PCRA requires a petitioner to establish due diligence only with respect to the exception for newly discovered facts.  The PCRA imposes no such requirement for the exception premised upon governmental interference.  In light of the inescapable and clear statutory language, I agree with Justice Donohue that our precedent grafting a due diligence requirement onto the governmental interference exception is misguided, and should be revisited.[9]

Nonetheless, I join the Majority in its assessment of Towles' failure to demonstrate what the plain language of the governmental interference exception does require: that Towles prove that the government unlawfully interfered with his ability to present his claim.  Robinson did not testify at the PCRA hearing.  District Attorney Larson and Detective Arnold credibly testified that no one threatened or manipulated Robinson into cooperating against Towles.  Without any evidence of governmental interference, Towles failed to establish the requirements of this timeliness exception.

---

[7]    *Commonwealth v. Stokes*, 959 A.2d 306, 310 (Pa. 2008).

[8]    *Commonwealth v. Hill*, 736 A.2d 578, 588 (Pa. 1999) (cleaned up); *see also* Maj. Op. at 22.

[9]    *See* Conc. Op. at 2.

I cannot join the Majority's rejection of the applicability of the newly discovered facts exception. The Majority treats both timeliness exceptions as if they are one and the same and as if they share the same statutory prerequisites. They are not and they do not. The Majority analyzes the newly discovered facts exception using the same reasoning that it uses to reject the applicability of the governmental interference exception. According to the Majority, because Towles did not establish that the Commonwealth induced Robinson's testimony, Towles "failed to establish the operative newly discovered factual predicate upon which his claim is premised"[10]

This one-size-fits-all analysis ignores the plain language of the exceptions and conflates the merits of Towles' *Brady* claim with Towles' obligation to plead and prove that the "fact" upon which the *Brady* claim was predicated had been unknown to him. This "fact" is the allegation that the Commonwealth induced Robinson's testimony.[11] Towles learned of this "fact" upon receiving Robinson's affidavit. Relying upon that affidavit, Towles pleaded and proved that the fact of an alleged inducement was not known to him until March 5, 2020. This is all that the first part of Section 9545(b)(1)(ii) requires.[12]

Prior to *Commonwealth v. Bennett*,[13] confusion reigned regarding what Section 9545(b)(1)(ii) required of a petitioner in order to establish jurisdiction in the PCRA court. This Court previously had referred to this subsection incorrectly as the "after-discovered

---

[10] Maj. Op. at 26.

[11] Or, as the PCRA court considered it, "the fact that Mr. Robinson may have been testifying for the Commonwealth against his good friend because of threats or promises or deals. . . ." PCRA Ct. Op. at 17.

[12] 42 Pa.C.S. § 9545(b)(1)(ii) ("the facts upon which the claim is predicated were unknown to the petitioner . . . .").

[13] 930 A.2d 1264 (Pa. 2007).

evidence" exception,[14] conflating the jurisdictional requirements of Section 9545(b)(1)(ii) with the merits required to support a claim for relief under Section 9543(a)(2)(vi).[15]  In *Bennett*, we recognized that this "shorthand reference was a misnomer, since the plain language of subsection (b)(1)(ii) does not require the petitioner to allege and prove a claim of 'after-discovered evidence.'"[16]  Applying the Statutory Construction Act to the plain terms of Section 9545(b)(1)(ii), this Court held that "it simply requires petitioner to allege and prove that there were 'facts' that were 'unknown' to him and that he exercised 'due diligence.'"[17]  The *Bennett* Court recognized that, "[b]y imprecisely referring to this subsection as the 'after-discovered evidence' exception, we have ignored its plain language. Indeed, by employing the misnomer, we have erroneously engrafted *Brady*-like considerations into our analysis of subsection (b)(1)(ii)."[18]

*Bennett* unequivocally held that the PCRA creates a statutory separation of the jurisdictional requirements of Section 9545(b)(1)(ii) from the merits requirements of § 9543(a)(2).  All that Section 9545(b)(1)(ii) requires in order to establish jurisdiction is,

---

[14]     *See, e.g., Commonwealth v. Peterkin*, 722 A.2d 638, 643 (Pa. 1999) (referring incorrectly to the "newly discovered facts" timeliness exception as the "after discovered evidence" exception).

[15]     To be eligible for relief, this provision requires a petitioner to plead and prove that the conviction or sentence resulted from "[t]he unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced."  42 Pa.C.S. § 9543(a)(2)(vi).

[16]     *Bennett*, 930 A.2d at 1270.

[17]     *Id*. at 1270.

[18]     *Id*.

(1) that the facts upon which the claim is predicated were not known to the petitioner, and (2) that the facts could not have been ascertained with the exercise of due diligence.[19]

In *Bennett*, we cautioned against conflating the timeliness and merits.[20] Today, the Majority recreates the error that *Bennett* corrected, holding that the timeliness exception of Section 9545(b)(1)(ii) requires a petitioner to plead and prove the merits of the underlying claim. Proving the existence of the fact upon which a claim is predicated is distinct from establishing that the fact is true or that it warrants relief on the underlying claim. *Commonwealth v. Robinson* is illustrative.[21] There, the Opinion in Support of Reversal ("OISR") explained that newspaper articles reporting problematic emails involving a former Justice of this Court were the "facts" upon which a claim of judicial bias was predicated, *i.e.*, the fact "that [former Justice] Eakin sent and received offensive emails" for purposes of Section 9545(b)(1)(ii).[22] Whether the newspaper articles upon which Robinson's claim was based were later proven to be untruthful or factually inaccurate, or whether the emails were inadequate to establish actual bias by a sitting jurist, were questions that concerned the merits, not jurisdiction.[23] The *Robinson* OISR faithfully applied the two parts of Section 9545(b)(1)(ii) as separate statutory requirements, in accordance with *Bennett*'s mandate. Whereas the Opinion in Support

---

[19]     *Id*. at 1271-72.

[20]     *Id*. at 1271.

[21]     204 A.3d 326 (Pa. 2018).

[22]     *Id*. at 341 (OISR).

[23]     *Id*. at 342-43 (OISR) (observing that the issue of whether there was a connection between the emails and Robinson's case was a question that went to the merits of the underlying claim, not to the timeliness of the petition).

of Affirmance ("OISA") in *Robinson* attempted to conflate the PCRA's distinct provisions (akin to what today's Majority does), asserting that "the mere existence [of the emails] does not demonstrate the fact of bias," the *Robinson* OISR correctly responded that the "newly discovered 'fact' here is the email communications by Eakin, not the existence of bias."[24]

Similarly, in *Commonwealth v. Chmiel*,[25] we held that a newspaper report about an FBI press release regarding the unreliability of microscopic hair comparison analysis contained two newly discovered facts for purposes of Section 9545(b)(1)(ii) that served as predicates for the underlying claim that the petitioner's sentence resulted from faulty hair comparison analysis.[26] In finding the timeliness exception satisfied, we did not delve

---

[24]     *Id.* at 343 (OISR).

[25]     173 A.3d 617 (Pa. 2017).

[26]     As we explained:

> There are two newly discovered facts upon which Chmiel's underlying claim is predicated, both of which were made public for the first time in the *Washington Post* article and the FBI press release. First, the FBI publicly admitted that the testimony and statements provided by its analysts about microscopic hair comparison analysis were erroneous in the vast majority of cases. The FBI's revelation reverberated throughout the country, marking a "watershed in one of the country's largest forensic scandals," see Appendix B at 1, precisely because it constituted a public admission by the government agency that had propounded the widespread use of such scientifically flawed testimony. The revelation was the first time the FBI acknowledged that its microscopic hair analysts committed widespread, systemic error by grossly exaggerating the significance of their data in criminal trials. The Washington Post article acknowledged the novelty of the FBI's disclosures: "While unnamed federal officials previously acknowledged widespread problems, the FBI until now has withheld comment because findings might not be representative." See Appendix B at 2. Second, the FBI press release included the revelation that the FBI had trained many state and local analysts to provide the same scientifically flawed opinions in state criminal trials.

(continued…)

into the merits of the underlying claim.  We permitted the petitioner to file the petition. Then, and only then, could the PCRA court consider the merits of the claim.

And in *Commonwealth v. Blakeney*,[27] where the petitioner raised a claim of judicial bias, the fact upon which this claim was predicated was the group of emails involving former Justice Eakin as reported in newspapers.[28]  It was only upon the publication of these newspaper reports that Blakeney learned that former Justice Eakin had exchanged the offensive emails upon which Blakeney's claim was based.[29]  In reaching this conclusion, the OISR confronted the PCRA court's assertion that Blakeney's "submissions do not constitute fact, but rather a theory that the emails reflect a fact."[30]

---

*Chmiel*, 173 A.3d at 625.

[27]     193 A.3d 350 (Pa. 2018).

[28]     *Id*. at 361 (OISR as to timeliness) ("The claim that Blakeney raised in the Petition is one of judicial bias, premised upon the argument that Justice Eakin's participation in Blakeney's direct appeal and PCRA appeal violated various constitutional guarantees. The fact upon which the claim is predicated is the group of emails, and the bias of Justice Eakin that they suggest.").

[29]     As the OISR explained:

> With the publication of the newspaper reports, Blakeney, an African-American and a Muslim, learned that a member of this Court had exchanged emails denigrating African-Americans and Muslims.  Blakeney also learned that Justice Eakin had exchanged many other offensive emails with members of the prosecution, suggesting a relationship of sufficient closeness that threatened Justice Eakin's objectivity. These newly discovered facts revealed the potential for judicial bias that Blakeney believes unconstitutionally infected his appeals before this Court. The claim of judicial bias is predicated upon the existence and content of offensive emails transmitted by a sitting member of the court of last resort empowered to adjudicate Blakeney's two appeals (save for any resort to a federal forum).

*Blakeney*, 193 A.3d at 361 (OISR).

[30]     *Id*. at 362 (OISR).

We found this assertion puzzling, explaining that the newspaper reports revealed the content of the emails, and the emails revealed the predicate for the claim of judicial bias.[31] The *Blakeney* OISR also criticized the OISA's view that a petitioner is required to prove the new fact upon which the claim is predicated. The *Blakeney* OISR explained that "[s]ubstantiating the veracity of the fact upon which the claim is predicated is a question for merits review of the claim."[32]

The analysis employed by this Court in *Chmiel* and by the OISRs in *Blakeney* and *Robinson* is the same analysis that must be applied here. The newly discovered fact here is Robinson's inducement allegation (as contained in the March 2020 affidavit), just as the newly discovered fact in *Blakeney* and *Robinson* was the circulation of inappropriate emails (as reported by newspapers), and just as the newly discovered facts in *Chmiel* were contained in an FBI press release (as reported by media outlets). Today's Majority would require Towles to demonstrate that the Commonwealth actually induced Robinson's testimony in order for Towles to overcome the timeliness hurdle, in the same way that the OISA in *Robinson* would require the petitioner therein to establish timeliness by demonstrating judicial bias.

The OISA in *Robinson* was wrong then, and the Majority is wrong now. "[T]he [timeliness] exception set forth in subsection (b)(1)(ii) does not require any merits analysis of the underlying claim. Rather, 'the exception merely requires that the 'facts' upon which

---

[31]    *Id.* ("There was nothing theoretical about the disparagement that the emails revealed. Rather, the emails revealed facts about a High Court jurist who participated in Blakeney's direct appeal and PCRA appeal, and those facts served as the predicate for a claim of judicial bias.").

[32]    *Id.* at 364 (OISR).

such a claim is predicated must not have been known to appellant, nor could they have been ascertained by due diligence.'"[33]  Using the correct legal framework, it is clear that Towles established the first requirement of Section 9545(b)(1)(ii): that the fact upon which his *Brady* claim was predicated was not known to him.[34]

The second requirement of Section 9454(b)(1)(ii) requires Towles to establish that the fact could not have been ascertained by the exercise of due diligence.  The PCRA

---

[33]     *Bennettt*, 930 A.2d at 1271-72

[34]     To open the door to the PCRA courtroom, a petitioner is required to plead and prove the existence of a previously unknown predicate fact.  42 Pa.C.S. § 9545(b)(1)(ii). The predicate "fact" for purposes of the newly discovered facts exception is Robinson's allegation of the Commonwealth's inducement.  Towles is required to plead and prove that the fact of Robinson's allegation was unknown to him.  Robinson's affidavit is to Towles' claim what the emails were to Robinson's claim.  Maj. Op. at 26, n.17 (citing *Robinson*, 204 A.3d at 330-31).

On the merits of the *Brady* claim, the PCRA court noted that Towles relied upon Robinson's affidavit, and found that Robinson's failure to appear made it impossible to "determine the affiant's credibility."  PCRA Ct. Op. at 19.  Combined with other credited evidence, this defeated Towles' underlying *Brady* claim.  *Id.*  The Majority relies upon this merits-based holding to conclude that "no credible evidence of record establishes that Robinson, in fact, claimed that the Commonwealth induced his testimony, let alone that the inducement actually happened."  Maj. Op. at 25.

Once again, I disagree.  There is a distinction between Towles being unable to prove that the inducement happened and being unable to prove that Robinson, in fact, alleged that the inducement happened.  This is not an instance where a PCRA petitioner submitted a falsified affidavit.  Rather, Towles came to the PCRA court with an affidavit in hand affirming that the Commonwealth induced testimony.  The fact that the PCRA court later found that it could not determine the affiant's credibility for purposes of the underlying *Brady* claim does not mean that the allegation never happened.  The PCRA court's inability to assess Robinson's credibility goes to the merits of the *Brady* claim, not to whether Robinson made the allegation in the first place.

The Majority's overly narrow interpretation of Section 9545(b)(2)(ii) will prematurely close the door to petitioners seeking to establish their eligibility for post-conviction relief. To illustrate my concern, imagine a petitioner who obtains new exculpatory evidence. The Majority would require the petitioner to establish the credibility or validity of this evidence as part of establishing the timeliness of the PCRA petition.  In my view, these requirements go to the merits of the underlying claim, not to the timeliness exception.

court focused upon three junctures at which it believed that Towles failed to exercise due diligence in locating Robinson and in obtaining his statement before March 5, 2020: during cross-examination at trial; at the filing of Towles' first PCRA petition; and during investigations by current counsel, the Federal Community Defender Office ("FCDO"), after 2015.

According to the PCRA court, Towles first displayed a lack of due diligence at trial. The PCRA court noted that Towles' trial counsel was aware that Robinson was cooperating with the Commonwealth, feared prosecution, and had been directed not to speak to Towles' defense team. Yet trial counsel did not cross-examine Robinson to probe the possibility that he was testifying under threats or promises by the Commonwealth. The PCRA court believed that it would have been reasonable for trial counsel to probe Robinson's motives for testifying at trial, and that declining to cross-examine Robinson about his motives was unreasonable, thereby demonstrating a lack of due diligence.

I disagree with the PCRA court's evaluation of trial counsel's performance, as the court employed a flawed lens. Instead of asking whether the unique factual circumstances demonstrate that Towles put forth a reasonable effort, as due diligence demands, the PCRA court examined Towles' efforts with the clarity of hindsight. This clarity was not available to Towles or to counsel until many years later.

This sort of assessment transgresses the prohibition against hindsight evaluations in weighing claims of trial counsel ineffectiveness. One of the prongs of a claim of counsel ineffectiveness requires the petitioner to prove that counsel's course of conduct lacked a

reasonable basis designed to effectuate the client's interests.[35]  In assessing the reasonableness of an attorney's performance under a claim of ineffective assistance of counsel, we view counsel's performance "not in hindsight, but from counsel's perspective at the time."[36]  As we have explained,

> [a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.  This is so because it is all too tempting for a defendant to second-guess counsel, and all too easy for a court to deem a particular act or omission unreasonable merely because counsel's overall strategy did not achieve the result his client desired.[37]

Our retrospective view of counsel's efforts for purposes of one aspect of the PCRA (due diligence for a timeliness exception) is problematic in light of our condemnation of the same for purposes of another aspect of the same statute (claims of counsel ineffectiveness).  The PCRA court's assessment of due diligence relied exclusively upon the distorting effects of hindsight, reconstructed the circumstances of counsel's conduct, and evaluated the attorney's efforts not from the attorney's perspective at the time but

---

[35]    *Commonwealth v. Spotz*, 870 A.2d 822, 830 (Pa. 2005) ("Thus, the constitutional ineffectiveness standard requires the defendant to rebut the presumption of professional competence by demonstrating that: (1) his underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his interests; and (3) but for counsel's ineffectiveness, there is a reasonable probability that the outcome of the proceedings would have been different.").

[36]    *Commonwealth v. Jones*, 815 A.2d 598, 615 (Pa. 2002) (Opinion Announcing the Judgment of the Court).

[37]    *Id*. at 615–16 (cleaned up); *see also Lockhart v. Fretwell,* 506 U.S. 364, 372 (1993) (observing that the requirement of "contemporary assessment" recognizes that "from the perspective of hindsight there is a natural tendency to speculate as to whether a different trial strategy might have been more successful"); *Commonwealth v. Sneed*, 45 A.3d 1096, 1108 (Pa. 2012) ("A claim of ineffectiveness generally cannot succeed through comparing, in hindsight, the trial strategy employed with alternatives not pursued.") (citing *Commonwealth v. Miller*, 819 A.2d 504, 517 (Pa. 2002)).

from the court's perspective many years later. While, from our appellate perch, we refuse to second-guess counsel's conduct in the face of allegations of ineffectiveness, we simultaneously do exactly that in our due diligence analysis. Although an ineffectiveness inquiry would not deem an act or omission unreasonable merely because it was unsuccessful, the due diligence inquiry requires the petitioner to have pursued every alternative, regardless of whether any would have been successful. In both cases, it is the Commonwealth that benefits and the PCRA petitioner who shoulders the nearly insurmountable burden.

In addition to relying upon the Commonwealth's disclosure obligations for information that might be useful for cross examination,[38] trial counsel conducted his own pre-trial investigation of Robinson. Trial counsel repeatedly attempted to interview Robinson, including at the county jail where Robinson was incarcerated. Each time, Robinson refused to cooperate. In April 2011, Robinson indicated that he had been told by someone not to talk to the defense team.

The PCRA court cast aside counsel's multiple attempts to interview Robinson, characterizing these efforts as unreasonable. According to the PCRA court, there was only one reasonable course of conduct: to cross examine Robinson at trial. Because it would have been reasonable to cross-examine Robinson, the PCRA court believed that anything else was unreasonable.[39] This is a non-sequitur. The reasonableness of one approach does not render all alternative approaches unreasonable. For example, imagine that counsel had cross-examined Robinson in order to discover Robinson's

---

[38]  *See United States v. Bagley*, 473 U.S. 667, 678 (1985).

[39]  *See* Maj. Op. at 24.

motive for testifying. Imagine further that counsel had done so instead of attempting to interview Robinson before trial. Would trial counsel's failure to attempt to interview Robinson before trial render counsel's cross-examination unreasonable? This illustrates the deficiency in using hindsight as a barometer for due diligence. There is always something else that could have been done, something that a court can latch onto as a more reasonable tactic, or something that simply makes more sense when we look back years later. That a court may find a better choice does not, *ipso facto*, render all of counsel's actions unreasonable. We must consider the action from counsel's perspective at the time.

If we were examining counsel's trial strategy within a claim of counsel ineffectiveness, we would ask whether counsel, upon cross-examination, had any reasonable basis not to probe the possibility of a deal with the Commonwealth. We would answer this question without resorting to the crutch of hindsight, and without comparing the course of conduct chosen to the universe of possible alternatives.

Evaluating counsel's conduct under a claim of ineffectiveness, I have no doubt that we would find that, given counsel's lack of success in interviewing Robinson before trial, counsel would have acted reasonably in declining to explore Robinson's motivation for testifying for the first time at trial. At the time of trial, counsel is operating in the service of one objective: an acquittal. Defense counsel is not seeking to lay the groundwork for due diligence just in case it turns out that the Commonwealth was violating its disclosure obligations under *Brady* by withholding favorable evidence and just in case the client may later have to establish a timeliness exception for a facially untimely PCRA petition. Counsel had no idea what Robinson would say if asked, because, despite counsel's

extensive efforts, Robinson had deliberately avoided speaking with counsel before trial. In front of the jury, it is not unreasonable for counsel to elect to avoid the risk of asking a question to which counsel does not know the answer.[40]  Without any indication that there were improper motives being supplied by the Commonwealth, and without any information from Robinson directly, it would have been irresponsible for counsel to explore Robinson's motivations in front of a jury.  Pursuing a line of questioning without a predicate factual basis, and without knowing the witness's likely answers, could cause counsel to appear dishonest, amateurish, or both.  It could diminish counsel's credibility with the jury and seriously handicap counsel's ability to advocate for the client.  It could produce testimony that hurts the client's case.  Reasonable counsel would safeguard the client's interests and counsel's own credibility with the jury.  Reasonable counsel does not squander jurors' goodwill by pursuing a line of questioning to which counsel does not know the likely answer.

The PCRA court also discerned a lack of due diligence in the efforts that Towles' attorneys made to locate and interview Robinson following Towles' first PCRA petition. Lawyers and investigators from the FCDO made multiple visits to Robinson's address and his parents' address.  Ultimately, in March 2020, they succeeded in obtaining Robinson's affidavit.  The PCRA court determined that the FCDO's ultimate success in locating and speaking with Robinson in 2020 at Robinson's address indicated that counsel's prior unsuccessful efforts lacked due diligence.[41]  The PCRA court held that,

---

[40]     *See, e.g.,* Tom Branigan, *Cross-Examination of Technical Experts*, 94 Mich. B.J. 58, 60 (2015) (referencing the adage to "[n]ever ask a question on cross to which you do not know the answer").

[41]     PCRA Ct. Op. 5/5/2022 at 16.

instead of continuing to seek Robinson at his and his parents' home addresses, reasonable counsel should have pursued other methods of locating him, such as contacting Robinson's prior counsel of record or his probation officer. Because there were reasonable alternatives, the PCRA court concluded that Towles' (ultimately successful) efforts were unreasonable, demonstrating a lack of due diligence.

The PCRA court transformed due diligence into a moving target, retrospectively evaluating the reasonableness of counsel's ultimately successful efforts by measuring them now against speculative alternatives that counsel could have pursued then. With the benefit of hindsight, and with the liberty to move the goal posts, it is easy to look back now at what was done then and contrast it with what else could have been done. But the question is not whether a petitioner could have done more, for the answer to that will always be "yes." The question is whether the petitioner or petitioner's counsel "put forth a reasonable effort to obtain the information upon which a claim is based."[42]

Imagine that, instead of trying to find Robinson at his address, counsel unsuccessfully had tried to arrange a meeting through Robinson's attorney or probation officer. Would the PCRA court hold that those unsuccessful efforts were unreasonable because Robinson was available at his own residence? I fear that it would. What if counsel had attempted to contact Robinson's attorney, but not his probation officer? Would that be unreasonable? It is one thing to scour the universe of potential alternatives that were not pursued; it is quite another to ask whether the path chosen, a path that ultimately was successful in obtaining Robinson's affidavit, was reasonable.

---

[42] *Commonwealth v. Bagnall*, 235 A.3d 1075, 1091 (Pa. 2020) (citation omitted).

Instead of focusing upon additional or alternative steps that counsel could have taken, I would confine the due diligence analysis to the reasonableness of the steps that counsel did take. It was reasonable for counsel to attempt to locate Robinson repeatedly at his and his parents' last known addresses. The reasonableness of these efforts is demonstrated by their ultimate success.

Although I cannot agree with the PCRA court's analysis of due diligence at trial or after the first PCRA petition with respect to the newly discovered facts timeliness exception, the record supports the PCRA court's holding that Towles failed to establish the due diligence necessary to demonstrate that his second PCRA petition was timely filed. As the PCRA court found, Towles has made no attempt to establish what efforts he undertook to locate Robinson to obtain a statement in connection with his first PCRA petition.

Thus, I join Sections I, II, and III of the Majority's opinion. I concur only in the result of Section IV, affirming the PCRA court's dismissal of Towles' second PCRA petition as untimely. I agree with the Majority that Towles failed to establish the governmental interference exception. I disagree with the Majority's treatment of the newly discovered facts exception. Rather than holding that Towles failed to establish the fact upon which his underlying claim was predicated, I would hold that Towles failed to establish that he acted with due diligence.